**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RHONDA K. GRAYSON and JEFFREY D. KENNEDY,<br><br>Plaintiffs,<br><br>vs.<br><br>PRINCIPAL CHIEF DAVID W. HILL, *et al.*,<br><br>Defendants. | Case No.: 5:26-cv-01874-R<br><br>**DEFENDANT PRINCIPAL CHIEF DAVID W. HILL'S REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO CHIEF HILL'S MOTION TO DISMISS** |

Defendant David Hill ("Chief Hill"), Principal Chief of the Muscogee (Creek) Nation (the "Nation"), respectfully submits this reply brief to Plaintiffs' brief in opposition to his motion to dismiss. Chief Hill reiterates his position that the Court must dismiss the Complaint for lack of subject matter jurisdiction and a failure to state a claim. The Nation is a required and indispensable party to this action but may not be joined due to its tribal sovereign immunity. And nothing in the Treaty of 1866 constitutes a clear and express abrogation by Congress of the Nation's sovereign immunity from suit. Dismissal is appropriate.

## <u>ARGUMENT AND AUTHORITIES</u>

### I. Plaintiffs Have Not Effectively Countered Against the Argument That The Complaint Must Be Dismissed for Failure to Join the Nation Under FRCP Rule 19.

Contrary to Plaintiffs' position, Chief Hill has established that the Nation, as a matter of federal law, has a legally protected interest in the inherent right of the Nation to determine its own membership. One of the core attributes of an Indian tribe's sovereignty is the right to determine its own membership. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 (1978) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."); *Fletcher v. United States*, 116 F.3d 1315, 1326-27 (10th Cir. 1997) ("Indian tribes are separate sovereigns with the power to regulate their internal and social relations, including their form of government and tribal membership.").

The Nation operates and functions as a sovereign tribal government under its own Constitution approved by the Muscogee (Creek) people in 1979[1]. And included in this Constitution are the requirements for citizenship with the Nation, as determined by the Creek people. Federal law is clear that this membership determination must be respected.

In their response, Plaintiffs argue that the Nation is not a necessary party in this action. However, even though Chief Hill is the current Principal Chief for the Nation, he is a Tribal official for only the Executive branch of the Nation with no sole independent power to enact legislation for the Nation and without sole authority or control over the Nation's citizenship rolls.

[1] The Nation's Constitution also obtained approval from the Acting Deputy Commissioner of Indian Affairs acting under authority from the U.S. Secretary of the Interior.

Plaintiffs' reliance on *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292 (10th Cir. 1994) is not dispositive on the form or type of evidence that is required in support of a 12(b)(7) motion to dismiss. That case did not involve a challenge to a tribe's inherent right to determine citizenship under its own Constitution and tribal law. "[N]o right is more integral to a tribe's self-governance than its ability to establish its membership. A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989). The Nation clearly has a protected interest making it a necessary party to this action.

## II. Under the Nation's Constitution and Citizenship Code, Chief Hill Does Not Have the Sole Authority to Provide Plaintiffs With the Relief They Seek.

As a legal and practical matter, Chief Hill cannot provide the relief sought by Plaintiffs. While Plaintiffs are correct that, under the Nation's Constitution, the entire Executive power of the Nation rests with the Principal Chief, the fact remains the whole tribal government functions under a three-branch system. Similar to the U.S. Constitution and the Oklahoma Constitution, the Nation's branches of government—Executive, Legislative, and Judicial—are separate branches with independent authority vested by and through the Nation's Constitution.

The Nation's Constitution provides for the executive authority falling under the Executive Branch with the Principal Chief being the head of that branch. *MCN Const., Art. V*[2]. But the Nation's legislative power rests with the National Council under Article VI of the Constitution. Even if an injunction in this case were issued against Chief Hill, that does not prevent the National Council from enacting legislation contrary to that injunction. And, while Chief Hill does have veto power, the National Council has the constitutional authority to override that veto. *MCN Const., Art. VI, Sec. 6(a).*

Chief Hill lacks the constitutional authority to exercise sole control and authority over the Nation's citizenship rolls. The Nation's Constitution establishes as a constitutional office the Citizenship Board, with the responsibility of establishing and maintaining the Nation's citizenship roll and other duties as prescribed by Nation law. *MCN Const., Art. III*. Chief Hill does have the responsibility to appoint the five members of the Citizenship Board, but these appointments are subject to approval by a majority of the National Council. *MCN Const., Art. III, Sec. 1.*

## III. The Nation's Sovereignty Interests Prevent the Application of *Ex Parte Young* to be Applied in this Case.

In his motion to dismiss, Chief Hill asserts that *Ex Parte Young* is inapplicable and should not be applied in this case due to the Nation's

[2] The Nation's Constitution can be found on the website for the Nation's Supreme Court at: http://www.creeksupremecourt.com/mcn-constitutiion/ (sic)

overriding "special sovereignty interests" that are implicated by Plaintiffs' action. In their response, Plaintiffs argue that the "special sovereignty interests" analysis is no longer applicable based on *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635 (2002) and *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007). However, both of these cases involve the application of *Ex Parte Young* in the context of whether ***the Eleventh Amendment*** is a bar to the federal action, an issue not implicated in this case. "[I]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md.*, 535 U.S. at 645. "We [] hold that the prospective relief sought in this case falls within the scope of *Ex Parte Young* and is not barred by the Eleventh Amendment . . ." *Hill*, 478 F.3d at 1262. To the extent *Verizon Maryland* and *Hill* overrules (implicitly or otherwise) *Coeur d'Alene* in cases involving State officials' Eleventh Amendment immunity, there is no such issue in this case.

Further, nothing in *Verizon Maryland* says anything about the Supreme Court expressly overruling its "special sovereignty interests" analysis provided in *Coeur d'Alene*. Notwithstanding the Tenth Circuit's view in *Hill*, another federal circuit recognized the lack of clear guidance by the Supreme Court:

> *Coeur d'Alene* remains binding upon us. *Verizon* did not overrule *Coeur d'Alene*, and in fact the Court quoted language from the earlier opinion. Moreover, the Court recently affirmed *Coeur d'Alene*'s core holding that the Eleventh Amendment bars actions that are "the functional equivalent of a quiet title suit" against a state. [cite

> omitted]. To the extent there is some tension between the "straightforward inquiry" recognized in *Verizon* and the "unique" and "narrow" circumstances of *Coeur d'Alene*, we must follow *Coeur d'Alene*, "which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."

*Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1074 (9th Cir. 2014).

Plaintiffs' Complaint naming Chief Hill in his official capacity does not implicate Eleventh Amendment concerns. And insofar as Chief Hill is being sued in his official capacity under authority of cases finding *Ex Parte Young* applicable to tribal officials, this Court should not be limited to any limitations in *Verizon Maryland* and *Hill*. This Court should find that the Nation's sovereignty interests prevent the application of *Ex Parte Young*.

The relief sought by Plaintiffs is a direct attack to the Nation's sovereignty and powers of self-government. Plaintiffs' claims challenge the Nation's sovereign right to be governed by a constitution established by its people, to determine who may be citizens of the Nation, who may vote and run for office, and the formation, application, and enforcement of its own tribal law and policy. In such a case, *Ex Parte Young* is not applicable to provide the Court with jurisdiction in this action. Such an affront to the Nation's sovereign interests rises to the level of intrusiveness comparable to the state's sovereign interests in *Coeur d'Alene*. The Court should find *Ex Parte Young* inapplicable.

Even if *Coeur d'Alene* were not applicable in this case, Plaintiffs' claim against Chief Hill under *Ex Parte Young* would still fail because the claim does not involve ongoing violations of <u>federal</u> law. Plaintiffs allege Chief Hill is "engaged in ongoing violations of federal law because the Treaty of 1866

guarantees tribal citizenship to Plaintiffs, but Chief Hill is denying Plaintiffs' citizenship in violation of the Treaty of 1866 by withholding his signature from Plaintiffs' citizenship cards." *Plaintiffs' Response*, pg. 6. But there is nothing in the Treaty of 1866 or in any other provision of federal law that requires Chief Hill (or any Principal Chief of the Nation) to sign citizenship cards; rather, the responsibility of Chief Hill to sign citizenship cards is based on Nation law. *See* Muscogee (Creek) Nation Code of Laws, 7 M(C)NCA § 4-109. Even if this Court were to issue an injunction requiring Chief Hill to sign citizenship cards for Plaintiffs, that signature on their cards, in and of itself, does not legally grant citizenship to Plaintiffs.[3] That would require an amendment to the Nation's Constitution and Citizenship Code that currently recognize citizenship can only be granted to Muscogee (Creek) Indians by blood.

## IV. Venue Is Improper In The Western District of Oklahoma.

Plaintiffs fail to meet their burden of establishing venue is proper in the Western District of Oklahoma (WDOK). They interpret 28 U.S.C. § 1391 to anchor venue because the *effects* of the alleged violations are felt in the WDOK under § 1391(b)(2), and that the Defendants, sued in their official capacities, transform into "entities" subject to *every* judicial district in state of Oklahoma under § 1391(c)(2). These assertions are misplaced.

### A. Effects "Felt" In This District Do Not Satisfy § 1391(b)(2).

[3] The Nation's Citizenship Code requires that certification of any applicants for citizenship "shall require a majority vote of the Citizenship Board." 7 M(C)NCA § 4-108.A.

Plaintiffs argue under § 1391(b)(2) that venue is proper because they feel the effects of the Citizenship Board's enrollment decisions in the WDOK. This argument conflates the location of the Plaintiffs' subsequent harm with the core events or omissions giving rise to the alleged claims.

Section 1391(b)(2) requires a "substantial part of the events or omissions giving rise to the claim occur" in the judicial district. The Tenth Circuit has held that the location of the defendant's acts or omissions is the focus of the inquiry, not the place where the plaintiff later feels the consequence. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166-67 (10th Cir. 2010). In *Bartile*, the court looked at where the acts or omissions occurred, and it did not consider where the plaintiff felt the effects independently as sufficient to establish venue. Venue was proper in Wyoming because that is where the negligent work took place, which formed the basis of the claim. The court looked at the "entire sequence of events" underlying the claim. *Id.*

The alleged conduct here is, arguably, limited to the administrative review, deliberation, denial of applications and refusal to issue and sign citizenship cards. This sequence of events occurred outside the WDOK. In their response, Plaintiffs do not dispute this; rather, they argue venue is appropriate in the WDOK since "Defendants continue to deny Plaintiffs' citizenship in this district and refuse to issue Plaintiffs' citizenship cards in this district." *Plaintiffs' Response*, pg. 21. Even if true that Plaintiffs are experiencing the results of the refusal in the Western District, this is not a substantial part giving rise to the claim. The case of *Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409 at *1

(10th Cir. June 17, 1999), confirms the point. The court held that venue was improper in the Eastern District of Oklahoma, where the only connection to the district was the child support order issued that allegedly led to the plaintiff's termination. The court stated the order was "simply too tangential," to be a substantial part giving rise to the claim. *Id.* The court emphasized that "venue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim, the "focus [is] on relevant activities of the defendant, not of the plaintiff." *Id*. (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). Because the operative events occurred outside the Western District of Oklahoma, the Plaintiffs cannot rely on passive "effects" to satisfy their burden.

**B. Official-Capacity Status Does Not Make The Defendants Entities Under § 1391(c)(2).**

Plaintiffs next assert under § 1391(c)(2) that because the Defendants are sued in their official capacities, they are "entities" that reside in any judicial district in Oklahoma. This is incorrect. Section 1391(c)(1) provides that a natural person resides where he is domiciled, and § 1391(c)(2) applies only to an entity *with the capacity to sue and be sued* in its common name. While an official capacity suit treats the underlying government as the real party in interest for liability and fee purposes, it does not rewrite or redefine the defendant as an entity under the venue statute. *Kentucky v. Graham*, 473 U.S. 159 (1985). Here, the Defendants are natural persons holding offices in the Nation's tribal government, not corporate

bodies governed by § 1391(c)(2). Further, the Nation does not have the capacity to be sued due to sovereign immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Plaintiffs cannot use the fiction of an official capacity suit to circumvent sovereign immunity, while attempting to treat the officers as the tribal entity to allow for statewide venue.

## CONCLUSION

Based on the foregoing and the motion to dismiss and supporting brief, Plaintiffs' Complaint must be dismissed.

Respectfully submitted this 10th day of November 2026.

*/s/ O. Joseph Williams*
O. Joseph Williams, OBA # 19256
O. Joseph Williams Law Office, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, Oklahoma 74447
T: (918) 752-0020
E: jwilliams@williamslaw-pllc.com

*Attorney for Defendant David W. Hill, Principal Chief of the Muscogee (Creek) Nation*

**CERTIFICATE OF SERVICE**

This is to certify that on the 10th day of November 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System for filing. Counsel identified below will be served via the Notice of Electronic Filing that is automatically generated by the CM/ECF System:

Damario Solomon-Simmons – dss@solomonsimmons.com
Jana L. Knott – jana@basslaw.net
Lauren Briggerman – lauren.briggerman@squirepb.com
William Hupp – william.hupp@squirepb.com

*Attorneys for Plaintiffs*

*/s/ O. Joseph Williams*
O. JOSEPH WILLIAMS